UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

INVERNESS HOLDINGS, LTD.,

        Plaintiff,

Case No. 1:06-CV-824

v.

Hon. Richard Alan Enslen

FRED J. SCHAAFSMA, JOSEPH
L. ZIMMERS, Z & Z ENTERPRISES
OF TRAVERSE CITY, INC., LEGACY
PINES, LLC, RON WILLIAMSON,
RANDY WILLIAMSON, MISSION
BAY CONSTRUCTION, and MORGAN
FARMS DEVELOPMENT, LLC,

**OPINION**

        Defendants.
_____/

    When a man tells you that only flowers, cheers and pots of gold are in your future, exercise some healthy scepticism; but when he tells you that he is stealing from you, by all means, believe him right away!

    This matter is before the Court on Defendants Fred J. Schaafsma, Joseph L. Zimmers, Z & Z Enterprises of Traverse City, Inc., Legacy Pines, LLC, Ron Williamson, Randy Williamson, Mission Bay Construction, and Morgan Farms Development, LLC's Motion for Judgment on the Pleadings. Plaintiff Inverness Holdings, Ltd. has, with one exception, opposed the relief sought by Defendants. Oral argument is unnecessary in light of the briefing received. *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

This suit was commenced on November 20, 2006. The Complaint is alleged in four counts: Count I, for violation of section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b); Count II, for violation of section 12(2) of the Securities and Exchange Act of 1933 (15 U.S.C. § 77l(a)(2)); Count III, for violation of section 410(2) of the Michigan Securities Act (Mich. Comp. Laws § 451.810); and Count IV, for common law fraud. (*See* Compl. ¶ 1.)

The substance of the Complaint is explained as follows: Plaintiff Inverness Holdings, Ltd. is a for-profit investment company which purchased a membership interest in a limited liability company which was developing a real estate subdivision in Traverse City, Michigan. (*Id.*) Plaintiff's President is Richard C. Hermann. (*Id.* at ¶ 2.) Hermann learned in August 2003 of the real estate subdivision development in Traverse City (known as Morgan Farms), and learned that the principals (Defendants Schaafsma, Zimmers, and Ron and Randy Williamson) were soliciting investment in the project. (*Id.* at ¶¶ 12-13.)

At an investment meeting, Schaafsma and Zimmers made the following representations to Hermann: (1) the project had zoning approval; (2) the project had permit approval and was ready for construction; (3) agreements to construct sewer and water service were in place, and all outstanding design issues had been resolved; (4) cost studies and engineering estimates had been confirmed by an outside consultant; (5) most of the units for Phase I of the project had received purchase contracts with deposits and sales were to begin closing before the end of 2003; (6) Morgan Farms had closed on the real estate for Phase I in the Spring of 2003 and land for Phase II was under option; (7) Schaafsma and Zimmers were personally investing $450,000 in the project; (8) the procedure for the use and expenditure of investment monies was that all investor money would be held by Wolverine

2

Bank, which money would be used and released only for construction after a formal construction draw request was submitted; and (9) Zimmers had experience with real estate development projects and would be actively involved in the construction and development of the project. (*Id.* at ¶ 15.) Schaafsma also projected the investors would receive a full return of principal within 24 months and a 400 percent profit within five years. (*Id.* at ¶ 16.)

Despite concerns about the project expressed by Hermann, he directed a check from Inverness to Zimmers on October 24, 2003, in the amount of $440,000, which represented a purchase of a 12 percent membership interest in Morgan Farms. (*Id.* at ¶¶ 19-23.) The purchase of the membership interest was made in reliance upon the representations made by Schaafsma and Zimmers. (*Id.* at ¶¶ 39-40.)

The representations made during the meeting were later discovered by Hermann to be false. (*Id.* at ¶¶ 33-42.) Plaintiff alleges that Defendants knew the misrepresentations to be false when they were made. (*Id.*) Plaintiff received notice on or about May 6, 2004 in the form of an "investor update" together with Morgan Farms' October 31, 2003 financial statement. (*Id.* at ¶¶ 27-28 and Ex. D.) These items showed that large sums of investors' monies were being used to pay Schaafsma, Zimmers and others consulting fees and land acquisition fees. (*Id.*) The update also disclosed that permit approval for the site's water distribution system was still pending before the Michigan Department of Environmental Quality and Traverse City. (*Id*; Ex. D at 1.) The update similarly disclosed that "aesthetics of the Village Square" were scheduled for future approval. (*Id.*)

On February 19, 2006, Hermann, on behalf of Inverness, requested rescission of the investment and return of his principal. (*Id.* at ¶ 37 & Ex. F.) Defendants Schaafsma and Zimmers refused this request. (*Id.* at ¶ 38.) Plaintiff alleges that Defendants' conduct has caused him

damages, including a loss of value of the investment funds and lost earnings on those investment funds.  (*Id.* at ¶¶ 43, 53, 62, 70, 76.)

Defendants' Answer, filed on January 6, 2007, preserves and asserts Defendants' affirmative defense that this action, including the federal counts, are precluded by the applicable statutes of limitation.  (Answer at 27 ¶ 5.)

**LEGAL STANDARDS**

Defendants' Motion is brought pursuant to Rule 12(c), requesting judgment on the pleadings. Under said rule, the governing legal standards are functionally the same as for a motion brought pursuant to Rule 12(b)(6) to dismiss based upon a failure to state a claim.  *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 n.1 (6th Cir. 1988); *Smith v. Eaton Corp.*, 102 F. Supp. 2d 439, 440 (W.D. Mich. 2000).

Rule 12(b)(6) directs that a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The allegations of the complaint must be construed in favor of the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The rules generally require only a "short and plain statement of the claim" and not detailed allegations.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  Allegations of fraud, however, must be pled more specifically and in accordance with Rule 9(c).  Indeed, when the allegations involve security fraud pursuant to section 10(b) of the Exchange Act, the plaintiff must "allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury."  *Hoffman v.*

4

*Comshare, Inc. (In re Comshare, Inc. Secs. Litig.),* 183 F.3d 542, 548 (6th Cir. 1999); *see also* 15 U.S.C. § 78u-4(b)(1); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004). Even without these heightened pleading standards for fraud, every complaint "'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Scheid*, 859 F.2d at 436 (emphasis in original) (citations omitted.)

"Dismissal of a complaint because it is barred by the statute of limitations is proper when 'the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" *Gibson v. American Bankers Ins. Co.,* 289 F.3d 943, 946 (6th Cir. 2002) (quoting *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984)). In making such analysis, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

For the purpose of Rule 12(c) analysis, the allegations of the complaint also include materials contained within exhibits attached to the Complaint. *See* Rule 10(c); *Amini v. Oberlin College*, 259 F.3d 493, 502-03 (6th Cir. 2001); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

**LEGAL ANALYSIS**.

This is not a diversity case. As such, the basis for federal jurisdiction is premised upon federal question jurisdiction under 28 U.S.C. § 1331 as to the federal security law claims and supplemental jurisdiction under 28 U.S.C. § 1367 as to the pendent state law claims. (*See* Compl. ¶ 10, alleging jurisdiction). The Court will examine the federal claims first before any examination of the pendent state law claims.

**1. Federal Claims**

Defendants' Motion exposes recent and significant changes to the federal securities laws made by section 804(a) of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745, 801 (July 30, 2002). This section replaced a prior version of the statute respecting the limitation period applicable to federal securities fraud actions with the following language:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, . . . , may be brought not later than the earlier of--
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.

*Id.* at 801, codified at 28 U.S.C. § 1658(b).

Although the briefings of the parties are replete with disagreements, one area of agreement between the parties is that this provision controls the limitation period for Plaintiff's federal claims. (*See* Pl.'s Resp. in Opp. to Defs.' Mot. for J. on the Pleadings 6; Defs.' Br. in Supp. of Mot. for J. on the Pleadings 2.)

Defendants' argument focuses on the "discovery" clause as prompting the running of the limitation period. Defendants maintain that this "discovery" was in May 2004 when Plaintiff received notice of several misrepresentations. As referenced above, the May 6, 2004 disclosures did provide actual notice that the representation specified in paragraph 15(b) of the Complaint that "[a]ll necessary permits for Phase I had been secured" was false because water system approval was pending; the representations specified in paragraph 15(b) and (d) of the Complaint that "the parcel was ready for construction" and "all outstanding design issues had been resolved" were false because

6

design planning was in progress; and the representation specified in paragraph 15(d) of the Complaint that "all investor money was to be used for construction of the subdivided lots" was false because large consulting fees were being paid from investment monies to Schaafsma, Zimmers and others.[1] These admissions by party opponents provided actual notice of the false representations to Plaintiff. *See* Fed. R. Evid. 801(d)(2). While proof of a false representation is not proof of fraud, when that false representation is made as to facts which are readily discerned (payment procedures, permit status and construction readiness) by persons who represent that they are in active management and control of the project, then fraud is the only ready conclusion. This is especially true in this Circuit since 10(b) fraud may be proven by evidence of "reckless" misrepresentations, *see Helwig v. Vencor, Inc.*, 251 F.3d 540, 550 (6th Cir. 2001), and the representations described in the Complaint have all of the hallmarks of recklessness, at the very least.

Furthermore, the case law surrounding section 1658(b) does not require actual knowledge of fraud; rather objective notice sufficient to cause discovery by a reasonable investor is the trigger for the limitation period. This point is made in the federal case law by an analogy trimmed in the language of meteorology. The Sixth Circuit has explained the pertinent standards as follows:

> [W]e clarified the standard for "inquiry notice" in *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir. 2003), *cert. denied,* 540 U.S. 1183, 124 S. Ct. 1424, 158 L. Ed. 2d 87 (2004). Joining at least seven other circuits, this court held that "inquiry notice" is sufficient to trigger the limitations period for securities fraud claims brought under § 10(b). The court also rejected the view that the limitations period should begin to run when a plaintiff learns facts that would cause a reasonable investor to investigate the "possibility of fraud." Instead, adopting the majority view, the court held that "knowledge of suspicious facts-'storm warnings,' they are frequently called-

---

[1]Defendants also argue that paragraph 30 of the Complaint indicates Plaintiff knew that construction was behind schedule more than two years prior to the filing of the Complaint. The problem with relying on paragraph 30 is that it is unclear from the paragraph whether this notice came before or after November 2004.

merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud." 336 F.3d at 501. In other words, the limitations period "begins to run when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." *Id.*

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 562-63 (6th Cir. 2005).

So when would have an objectively reasonable investor in Plaintiff's situation have discovered the perpetration of fraud by Defendants given the May 6, 2004 disclosures? The answer is nearly immediately. When the investor receives information from the sellers of the securities that funds which were to be held in trust for construction were paid to the principals who solicited the sale of securities and that the progress of the construction does not match earlier representations, then there is more than a storm cloud on the horizon. There is a tempest and the investor is wet with the knowledge that the investment representations were a mere ruse to separate the investor from the invested funds. This notice was sufficient to cause discovery of fraud, if not immediately, long before November 20, 2004.

Therefore, Defendants shall be granted judgment on the pleadings as to all of the federal claims alleged.

**2.  State Law Claims**

As specified in the supplemental jurisdiction statute, 28 U.S.C. § 1367, and in common law cases such as *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), even after federal claims are dismissed, the federal court retains subject matter jurisdiction over state law claims subject to its own discretionary judgment as to whether to exercise such jurisdiction. While such is discretionary, the strong federal custom since *Gibbs* has been to dismiss state law claims to permit state courts to decide their own law.

The history and operation of this statute was explained by the Sixth Circuit Court of Appeals in *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996):

> However, there is a second problem with the district court's assertion of supplemental jurisdiction over the unpled state law claims. On the particular facts of this case, it was an abuse of discretion to retain the state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 . . . (1966) established the doctrine of supplemental jurisdiction as a matter of federal common law.  Essentially, *Gibbs* held that a federal court can decide a state law claim that forms part of the same "case or controversy" as a claim over which the court has jurisdiction.  *Ibid.*  Since *Gibbs,* federal courts have expanded and shaped the doctrine of supplemental jurisdiction by applying it to new circumstances.
>
> In 1990, Congress passed a supplemental jurisdiction statute, now codified at 28 U.S.C. § 1367.  Although § 1367 overruled *Finley v. United States,* 490 U.S. 545 . . . (1989) (restrictions on jurisdiction over third parties), the statute affirmed *Gibbs,* as interpreted by subsequent federal courts, as the proper measure of federal supplemental jurisdiction. . . .
>
> A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.  *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit,* 738 F.2d 163, 166 (6th Cir. 1984).  That discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power.  *Gibbs* itself expressed one of the most important of these limits: "Certainly, if the federal claims are dismissed before trial, even though [the federal claims are] not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726 . . . .
>
> The word "certainly" was effectively erased by *Rosado v. Wyman,* 397 U.S. 397, 90 S. Ct. 1207 . . . (1970).  There the Court held that a district court did not abuse its discretion in retaining jurisdiction over supplemental state law claims after it dismissed the touchstone federal claim for mootness before trial.  397 U.S. at 405 . . . . *Rosado* held that there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims.  *Ibid.*  Instead, the decision depends on "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 . . . (1988).  This approach was codified at 28 U.S.C. § 1367(c)(3), which provides that a district court "may" (rather than must) decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."

*Musson Theatrical, Inc.*, 89 F.3d at 1254.

In the instant case, the dismissal is made early in the progress of the suit. The state law claims involve interest arguments as to the content of state law and the interests of comity favor dismissal of those claims without prejudice for later resolution by the state courts. As such, all state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## **CONCLUSION**

Accordingly, Judgment shall enter in favor of Defendants, dismissing all federal law claims with prejudice and all state law claims without prejudice.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>      May 14, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |